## O'Connor v. O'Connor

*John D. Conroy,* for plaintiff.
*Kenneth R. Williams,* for defendant.

BIESTER, JR., *J.,* December 9, 1985—This is a support case in which the wife, Sara W. O'Connor, sought support for herself from her husband Timothy O'Connor. Mr. O'Connor is chairman of the board and owner of 40 percent of the stock of a relatively closely held corporation and receives a salary income of $100,000 a year. He also receives the

usual perqs. attributable to a significant part-owner of a closely held corporation. After a hearing held on September 13, 1985, the undersigned entered an order in the amount of $575 per week for support of the wife. The respondent has filed an appeal from that order, hence this memorandum opinion.

The wife is 47 years of age. Her education terminated at one year of college and she has had no outside-the-home work experience for most of the marriage and is therefore not a person well-adapted to enter the labor market. She is seeking employment, but has not so far been able to obtain it. She also pointed out that she is still in some state of shock and has some trouble dealing with her whole home and marital situation. Obviously at some point she is going to be able to obtain employment and should obtain employment, but she has adequately explained so far why she has failed to do so.

The husband complains on appeal of the following matters:

1. "The court, in entering the order complained on appeal, improperly calculated defendant's net income.

2. The order of the court complained of on appeal exceeds one-third of defendant's net income.

3. The order of the court complained of is punitive and confiscatory.

4. The court, in entering the order complained of, failed to take into consideration the fact that defendant is paying the college education expenses of the parties' two children.

5. The court, in entering the order complained of, failed to take into consideration the parties' standard of living prior to the parties' separation.

6. The order of the court complained of is excessive.

7. The court, in entering the order complained of, improperly considered the possible and, therefore, necessarily speculative, income tax consequences of the order when calculating defendant's net income."

We will consider each one of the matters complained of seriatim.

With respect to the calculation of defendant's net income, we would point out that we are not bound by defendant's expression of net income on income tax returns or weekly paystubs and particularly are we not so bound where the defendant is essentially in business for himself and receives substantial so-called business expenses which enable him to live quite well before spending all of his taxable income. See Com. v. Miller, 202 Pa. Super. 573, 198 A.2d 373 (1964), and Com. ex rel. Maier v. Maier, 274 Pa. Super. 580, 418 A.2d 558 (1980). Defendant conceded that he received an unlimited expense account for travel and entertainment and received an automobile from the company. The defendant also received during about three months of the year free use of an apartment in Allentown just after the separation from his wife and before the purchase of his new home. We do not regard that latter perq. as a continuing one although the apartment is sometimes used by the parties' son particularly when working for the father's company during the summer. Defendant conceded that the car rental was $261 per month. We assume that since there is no amount set forth on his income and expense statement allocable to that car [all amounts on that statement are apparently for his 1970 Lincoln which he testified is more often in the garage than not] we assume the various expenses allocable to that automobile, the Honda, are provided by the company and we estimate those expenses to be in addition to

the rental expense of the car itself approximately $100 a month more for gas, oil and other matters, maintenance and repairs. Because there may be some income tax allocation for personal use of the car we had set the figure on a monthly basis at $300 per month as beneficial income arising out of the use of that car.

With respect to the unlimited expense account for travel and entertainment we note that defendant testified that he eats out frequently and that when he does so it is on his expense account. These matters are always difficult to estimate and we have been extremely conservative in estimating the truly income-beneficial effect of that unlimited expense account and deem Mr. O'Connor to have a beneficial personal interest in that account in the amount of $4,000 per year.

If one looks at his income statement he shows a weekly income of $1,923. His payroll deductions are $350 for Federal withholding, $53.65 for Social Security, $19.23 for local wage tax, $45.19 for Pennsylvania Income tax and other $1.92. That provides him with deductions on his paystub of $469.99 or a net pay showing on his paystub of $1,453.01. He therefore has at least an after-tax but before-perqs. annual income of $75,556.52. If one adds to that amount the car and travel and entertainment allocations we have earlier made one arrives at the figure of $83,156.52. That provides him with a weekly after-tax income of $1,600. We believe that this computation represents not only a proper calculation of the defendant's net income, of rather threshold net income before any tax effect or our order, we believe it most probably understates that income.

Defendant complains that our order exceeds one-third of his net income. As one computes the $1,600 a week income we have found and divided that by

three, one arrives at a figure of $533.05. Apparently it is the $41.95 additional which defendant complains of with respect to this particular concern. We believe that that additional $42 may easily be made up by defendant in a variety of ways. For example, among the monthly expenses he has is $400 per month for the maintenance of horses. One-half of that expenditure would easily make up the $42 and sometimes a person has to live with certain priorities in life. We have pointed out that the net pre-tax income is $1,600 per week before there is any tax impact of our order. No matter how speculative that tax impact may be, certainly it will readily consume the $42 without any doubt whatsoever. Under such circumstances our order is clearly far less than one-third of his net taxable income as one computes the tax effect of our order.

With respect to the complaint that our order is punitive and confiscatory we would point out that even under defendant's own computation of income and expenses he has a net available amount of $490 a week. We do not find him in every respect a credible witness. We noted for example that he listed $25 per week for lunches and $50 additional a week for food. In light of his expense account we find those figures rather high under the circumstances. We would also point out that defendant's credibility must be considered in light of the following circumstances. The parties have been married for over 20 years. The parties owned a home at Thompson Mill Road in Bucks County. Defendant advised his wife that since he was buying a new company in Allentown it would be necessary for them to move closer to the Allentown area and for that reason he suggested that they list their property for sale which the wife readily agreed to. Within a few days after the

execution of the agreement of sale for $276,000 defendant announced to his wife that he was separating from her and in fact left her and moved to the company's apartment in Allentown. We believe that a person who would deceive his wife in that fashion to achieve a comfortable sale of a major asset would not be above deceiving the court about the extent of his luncheon and food expenses or other matters as well. We therefore believe that he is readily able to pay her the amount of our order. The court did take into consideration the defendant's assertion that he was paying the college education expenses of the parties' two children. In our computation of his expenses we have adopted his figure of $12,000 for that expense.

The most extraordinary assertion and complaint that defendant makes is that in entering our order we failed to take into consideration the parties' standard of living prior to the separation. Not only did *we* take into account the parties' standard of living prior to the parties' separation, but *so has defendant*. In fact he has virtually replicated that standard of living, but, only for himself. He purchased a new home for approximately $140,000. The property is five years old, contains facilities for horses and has 11½ acres of ground. The property has a pool, four bedrooms and several baths. Unfortunately, his wife can consider the parties' prior standard of living only from a distance as she now lives in a small apartment in the New Hope area. In fact from our computation it would seem that defendant spends approximately $400 per week on his home alone.

Our order, we believe, is not excessive for the various reasons we have set forth above.

With respect to the income tax consequences of the order and to the contention that they may be

speculative, we would point out only that no court should operate in a vacuum separated from the reality of the economic world in which its orders have effect. To any extent to which any tax consequences might be speculative, we believe that the amount involved between $533 and $575 is so small that there is no speculation whatsoever with respect to the tax consequences of our order and its enabling the defendant to pay those monies without any impact whatsoever on his standard of living.

The foregoing memorandum spells out our reasons for entering the order appealed from.