584 A.2d 1028

**Anne Y. LOWER, Appellant,**

**v.**

**David A. LOWER.**

**Anne Y. LOWER**

**v.**

**David A. LOWER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1990.

Filed Jan. 10, 1991.

Petition for Allowance of Appeal
Granted June 7, 1991.

Mark Clement, Pittsburgh, for appellant (at 1884) and appellee (at 47).

Michael A. Steger, Pittsburgh, for appellant (at 47) and appellee (at 1884).

Before TAMILIA, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

These cross-appeals are from a court order enforcing the Separation and Property Settlement Agreement entered into by the parties in connection with their divorce. Wife contends that the trial court abused its discretion because it did not have jurisdiction to grant equitable relief. Alternatively, wife argues that if the trial court did have jurisdiction to grant such relief, it abused its discretion in not awarding her continuing alimony. Husband's primary contention is that the trial court erred in failing to award him attorney's fees. For the following reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

The parties were married on May 13, 1960, and separated in late July, 1976. On April 18, 1977, the parties entered into a Separation and Property Settlement Agreement ("Agreement"). The parties were divorced on August 1, 1977. The divorce decree does not mention the Agreement.

On June 7, 1988, husband was granted leave by the court to enforce the Agreement. Subsequently, on August 9, 1988, husband filed a complaint seeking enforcement of the Agreement. On November 28, after wife's preliminary objections were dismissed, wife filed her answer, new matter, and counterclaim for continuing alimony. Following an April 4, 1989 bench trial, the court entered an order on April 27, 1989 in which, *inter alia*, it directed wife to vacate the marital home within thirty days and the parties to enter into a listing agreement with a real estate broker to sell the marital home as per the Agreement. Husband filed post-trial motions, and wife responded and requested her own post-trial relief. The court heard argument on July 21, 1989. On November 8, 1989, the court issued its opinion and order modifying its earlier order as follows:

2. The Defendant's motion for post-trial relief be granted and that the Order entered on April 27, 1989, be modified as follows:

\* \* \* \* \* \*

4. The Husband shall be entitled to a credit for the fair rental value of the marital residence from February 5, 1988 until the date that the wife vacates the marital residence, which rental value shall be calculate [sic] at the rate of One Hundred Eighty–Seven and 50/100 (187.50) Dollars per month. This credit for rental value shall be paid to the Husband at the time of sale of the marital residence and shall bear interest at the rate of six (6%) per annum.

Order of Court, November 8, 1989 at 1–2. Wife filed a timely appeal. Husband filed a timely cross-appeal.

## I. WIFE'S APPEAL

Wife first contends that the trial court abused its discretion by granting equitable relief, in the form of specific performance, to her husband. Specifically, wife claims that although the Divorce Code, *see* 23 Pa.C.S.A. § 110, *et seq.*, authorizes the court to enforce an agreement between the

parties through equitable remedies,[1] the Agreement here predated the Divorce Code, and the Divorce Code is not to be applied retroactively. Furthermore, argues wife, as a matter of contract law, the trial court abused its discretion by granting the equitable relief represented in paragraphs 2.2 and 2.3 of its order. We agree.

In determining the rights of parties who have entered a marital agreement that predates the Divorce Code, the court must apply pre-Divorce Code law. *Casper v. Casper*, 359 Pa.Super. 559, 561, 519 A.2d 493, 495 (1986), *allocatur denied*, 516 Pa. 631, 533 A.2d 90 (1987). A property settlement agreement between parties who are involved in or contemplating divorce, which was entered into prior to the Divorce Code, will be enforced in accordance with the rules of law generally applicable to determining the validity of contracts. *D'Huy v. D'Huy*, 390 Pa.Super. 509, 518, 568 A.2d 1289, 1293 (1990) (citations omitted); *VanKirk v. VanKirk*, 336 Pa.Super. 502, 505, 485 A.2d 1194, 1196 (1984). Such contracts are enforceable in assumpsit and in equity by specific performance. *See Sonder v. Sonder*, 378 Pa.Super. 474, 494, 549 A.2d 155, 162 (1988). Our Supreme Court has emphasized, however, that "specific performance is an equitable remedy not available as a matter of course but only in unique situations." *Pugh v. Holmes*, 486 Pa. 272, 295, 405 A.2d 897, 908 (1979) (citing 11 S. Williston, *Contracts* § 1418A (3d ed. 1968); Murray, *On Contracts—A Revision of Grismore on Contracts*, § 183, Mutual Performances in Leases—The Implied Warranty of Habitability (1974)). Moreover, whether specific perform-

1. *See* 23 Pa.C.S.A. § 401(k), which provides, in relevant part, that:
(k) If at any time, a party has failed to comply with ... the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this act, in order to effect compliance with its order:
   (1) enter judgment;
   (2) authorize ... the collection of the rents and profits of the real and personal ... property of the party;
   (3) award interest on unpaid installments;
   (4) order and direct the transfer or sale of any property required in order to comply with the court's order....

ance is justified in a breach of contract case is within the discretion of the trial judge. *Petry v. Tanglewood Lakes, Inc.,* 514 Pa. 51, 57, 522 A.2d 1053, 1055 (1987). The court's decision turns upon the particular facts of the case and the weighing of the equities in each situation. *Id.* The court should grant specific performance only where an adequate remedy at law does not exist and where justice requires it. *Cimina v. Bronich,* 517 Pa. 378, 383, 537 A.2d 1355, 1358 (1988).

██ Here, because the parties' Agreement predated the Divorce Code, it must be enforced as a contract. *See D'Huy v. D'Huy, supra.* The Agreement, in relevant part, provides:

> [H]ome at 625 Dorseyville Road will be available exclusively to Wife as a home until Wife remarries, leaves the home by establishing any home elsewhere, or until the youngest unemancipated living child who lives with Wife attains eighteen (18) years of age at which time of the happening of the earliest such event, the house must be sold and both Husband and Wife must cooperate to the extent necessary to attain the best price for the sale of such home. In the event that a sale agreement is not entered into by the parties with one of the parties or others within two (2) months after the happening of the earliest such event noted above, Wife must vacate the home.

Separation and Property Settlement Agreement at 4. The issue we must address is whether the lower court fashioned a proper remedy in ordering specific performance upon wife. The remedy fashioned by the court, of course, followed the letter of the parties' Agreement. Nevertheless, there is no record evidence indicating that the situation presented here is so unique that "justice requires" an extraordinary remedy such as specific performance. *See Cimina v. Bronich, supra.* Moreover, the trial court did not state its reasons for ordering specific performance, *see* Trial Court Opinion at 2–3, and husband has not suggested either here or in the court below a reason why specific

performance is the only remedy that could make him whole. In addition, the court did not state that it found justice to require this remedy as opposed to monetary damages. *See Cimina v. Bronich, supra.* Finally, there is no apparent "inadequacy" in husband's remedy at law. *See Petry v. Tanglewood Lakes, Inc., supra.* Under the Agreement, husband would be entitled to a lump sum of $10,000.00 plus the return of his principal payments on the mortgage. The sale of the house serves as the triggering mechanism for when these amounts would be due. These damages are easy to calculate, and husband would be made whole upon payment, regardless of whether the house was sold. These circumstances convince us that the trial court abused its discretion when it enforced the contract between husband and wife through specific performance, ordering wife to vacate the premises and enter into a listing agreement to sell the marital residence. We, therefore, reverse that part of the trial court's order, i.e., sections 2.2 and 2.3, and remand for a determination of the amount due husband under the contract.[2]

▮ Wife's second contention is that the court should have awarded her permanent alimony. Specifically, wife argues that the parties' Agreement is clear and unambiguous on this point, and, therefore, the trial court should not have considered testimony from the parties regarding their intentions in interpreting the Agreement. When a contract is clear and unambiguous, the parties' intent is to be determined only from the express language of the agreement. ·*Steuart v. McChesney,* 498 Pa. 45, 49, 444 A.2d 659, 661 (1982). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Walton v. Philadelphia Nat'l Bank,* 376 Pa.Super. 329, 341, 545 A.2d 1383, 1389

2. Wife also contends that the trial court erred in granting husband a credit for the fair rental value of the marital residence until the date wife vacates the premises. *See* Trial Court Order, November 8, 1989 at 2. Because rental value was not originally part of the Agreement, the court's granting of this relief to husband was not specific performance. Thus, wife's argument regarding this section of the court's order is meritless.

(1988) (citation omitted). A court determines if a contract is ambiguous as a matter of law. *Id.* Upon finding an ambiguity, a court may examine the surrounding circumstances—i.e., extrinsic or parol evidence—to ascertain the intent of the parties and resolve the ambiguity. *Id.* (quoting *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987), *allocatur denied*, 517 Pa. 607, 536 A.2d 1331 (1987)). *See also D'Huy v. D'Huy, supra.*

Here, the Agreement provided for husband to pay wife a monthly lump sum to be reduced periodically when each of their children reached the age of eighteen. The Agreement, in relevant part, reads as follows:

2. That Husband will pay Wife:

(a) $500 per month plus mortgage payment as long as Wife remains unmarried, all children are under eighteen years of age, all children unemancipated [sic], all children live with Wife, and the home in which Wife and children live is known as 625 Dorseyville Road....

(b) Upon each child attaining eighteen years of age or leaving the home at 625 Dorseyville Road ... without being supported elsewhere by Wife or becoming emancipated, the support will be reduced $75 until the youngest unemancipated living child who lives with Wife or is being supported by Wife elsewhere than at 625 Dorseyville Road attains eighteen years of age at which time all support will cease.

Separation and Property Settlement Agreement at 2. Although the Agreement stated that "support" will continue in the event of wife's remarriage until the youngest child reaches eighteen, *id.* at 2, the parties did not define "support." The parties also used the word "alimony" in discussing the tax consequences of their financial arrangement:

(f) All payments over and above $75 per month per child plus the mortgage payment will be taken as alimony payments to Wife and such sums will be income to Wife upon which she will be required to consider as income ... such sums will be deductible from Husband....

*Id.* at 3. Close examination of the Agreement, however, reveals that the parties also failed to define that term.

The failure to define "support" and "alimony" makes precise interpretation of the Agreement impossible. For example, the Agreement states that all "support" shall cease when the youngest child reaches eighteen. Yet, it does not clarify whether the additional portion of the monthly sum above $75.00 per child, i.e., the "alimony" or spousal support payments, are included in the cessation of "support." Because the parties failed to define these two key terms in the Agreement, its meaning is ambiguous, and the court did not err in concluding that more evidence was needed to determine the parties' intent. We conclude, therefore, that the trial court acted properly in considering extrinsic evidence, together with the written Agreement, to find that "the declared intention of the parties was that all support, whether child or spousal, was to cease upon the eighteenth (18th) birthday of the youngest child." Trial Court Opinion, November 8, 1989 at 5. *See also Walton v. Philadelphia Nat'l Bank, supra.* Because this conclusion was supported by the evidence, the court did not err in refusing to award wife permanent alimony.

## II. HUSBAND'S APPEAL

Husband contends that the trial court erred in not awarding him attorney's fees. Specifically, he argues that since wife's conduct was "obdurate and dilatory," Husband's Brief at 12, the trial court should have awarded him attorney's fees. We disagree. "The court may require a party to pay another participant's counsel fees if the party's conduct in commencing the action was 'arbitrary, vexatious or in bad faith.'" *Santilo v. Robinson,* 383 Pa.Super. 604, 606, 557 A.2d 416, 417 (1989) (citing 42 Pa.C.S.A. § 2503; *Brenckle v. Arblaster,* 320 Pa.Super. 87, 466 A.2d 1075 (1983)). Furthermore, it is well-settled that we will not reverse the trial court on its decision whether to award counsel fees absent an abuse of discretion. *Wayda v.*

*Wayda,* 395 Pa.Super. 94, 112, 576 A.2d 1060, 1069 (1990) (citations omitted). Here, after carefully reviewing the record and the parties' briefs, we agree with wife and the trial court that the record shows that "the continuing dispute between the parties was one that had to be resolved by a third party." Trial Court Opinion, November 8, 1989 at 9. Furthermore, we are satisfied that the trial court has adequately set forth the relevant facts, and properly addressed and disposed of this issue in its opinion. *See id.* at 9. Accordingly, we affirm the trial court's disposition of this issue.[3]

For the foregoing reasons, we vacate sections 2.2 and 2.3 of the court's November 8, 1989 order and remand for proceedings consistent with this opinion. In all other respects we affirm the trial court's order.

Order affirmed in part, vacated in part, and remanded to the court below.

Jurisdiction relinquished.

---

**3.** Husband also contends that the trial court erred because it did not award interest on the $10,000.00 lump sum payment and the principal payments owed to him by his wife upon the sale of the marital residence. However, in light of our disposition of wife's first claim, there is no need for us to decide this issue at this time. Upon remand, the trial court will take into consideration husband's claim in fashioning a new remedy. We also note that because the date of the sale of the house is the trigger for husband's payments to become due, and we have found that the court cannot force wife to sell the marital residence, the trial court will have to decide anew the date upon which husband's award becomes, or should become, due, and whether interest is appropriate.